## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **FRACTUS, S.A.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | **Misc. Action No. _____** |
| | § | |
| **AT&T MOBILITY LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## NON-PARTY SBA COMMUNICATIONS CORPORATION'S
## MOTION TO QUASH PLAINTIFF FRACTUS, S.A.'S SUBPOENA AND
## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH[1]</u>

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Non-Party SBA Communications Corporation (referred to herein as "SBA") moves the Court to quash Plaintiff Fractus, S.A.'s ("Plaintiff" or "Fractus") Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, attached as **Exhibit A**, to which SBA objects. In support of this Motion and as good cause for this request, SBA would show the Court as follows:

### I.    BACKGROUND

SBA is engaged in the business of leasing space on cell phone towers to wireless carriers across North, Central, and South America. *See* **Exhibit B**, Declaration of Jason Silberstein at ¶3. SBA operates over sixteen thousand (16,000) towers in the United States alone. *Id.* While SBA owns the towers that it leases, the carriers own and operate the base station equipment and antennas that are installed on SBA's towers. *Id.* at ¶4. SBA itself does not perform any communication activities, and thus, has no need to own antennas or similar equipment. *Id.*

On April 19, 2018, Plaintiff Fractus filed suit against AT&T Mobility ("AT&T"), alleging

---

[1] Non-party SBA Communications Corporation files this Motion in the Southern District of New York as the Court "where compliance is required" under the terms of the Subpoena, in accordance with Rule 45(d)(3)(B). The matter in which this Subpoena was issued, and issuing Court, are *Fractus, S.A. v. AT&T Mobility, LLC, et al.*, C.A. No. 2:18-cv-00135-JRG, in the United States District Court for the Eastern District of Texas, Marshall Division.

that AT&T infringed on Plaintiff's patents for multiband antenna arrays and slim triple band antenna arrays. *See* Complaint for Patent Infringement at  ¶ 20-35. On May 30, 2018, Plaintiff's case against AT&T was consolidated with similar patent infringement suits Plaintiff initiated against Sprint Communications Company, L.P. ("Sprint"), T-Mobile US, Inc. ("T-Mobile"), and Verizon Communications Inc. ("Verizon"). AT&T, Sprint, T-Mobile, and Verizon (collectively, "Defendants") represent the overwhelming majority of the wireless carrier market. Exhibit B at ¶5. Defendants also happen to be leasing tower space from SBA. *Id.* at ¶6. SBA has never been a party to any of the individual lawsuits against any Defendant. Likewise, SBA is not currently, and has never been a party to the consolidated litigation.

On September 10, 2018, Plaintiff served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "2018 Subpoena"), a copy of which is attached as **Exhibit C**. The 2018 Subpoena required compliance in Washington, D.C. *See id.* On October 22, 2018, SBA filed a motion to quash that subpoena as a miscellaneous action in the court for the location of compliance, a copy of which is attached as **Exhibit D.** This motion included Jason Silberstein's sworn declaration detailing the volume of documents implicated in Plaintiff's requests and the impermissible undue burden that would be placed upon SBA were it required to search for and produce responsive documents. *See id*; Exhibit B at ¶9-13. The parties subsequently reached an agreement whereby Fractus would withdraw the 2018 Subpoena and SBA would withdraw its motion to quash. On November 2, 2018, SBA advised the court of this agreement, and the miscellaneous action was closed on November 6, 2018. *See* **Exhibit E**, Non-Party SBA Communications Corporation's Advisory to Court Regarding Motion to Quash Plaintiff Fractus S.A.'s Subpoena [Dkt. No. 1]; **Exhibit F**, November 6, 2018 Minute Order withdrawing motion to quash and closing action.

After months of silence, on March 1, 2019, Plaintiff served a second Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "2019 Subpoena"), a copy of which is attached as **Exhibit A**. In the interim between subpoenas, Plaintiff filed First Amended Complaints (Dkt. Nos. 100-103) against all Defendants and additional intervenor-defendants, and a Second Amended Complaints (Dkt. No. 125) against Sprint and related entities and intervenor-defendants.[2] Plaintiff's claims are still grounded in purported infringement on its patents for multiband antenna arrays and slim triple band antenna arrays. *See* First Amended Complaint [Dkt. No. 100] at ¶30-54; Second Amended Complaint [Dkt. No. 125] at ¶34-51. The 2019 Subpoena was issued by counsel out of the Eastern District of Texas. *See* Exhibit A. It directs SBA to produce documents at Kobre & Kim, LLP's New York, NY office. *See* Exhibit A. While the language and number of the requests differ from the 2018 Subpoena, the 2019 Subpoena seeks essentially the same documents and still imposes an oppressive and undue burden on non-party SBA. As explained below, the 2019 Subpoena is procedurally defective, overly broad and vague, unduly burdensome, and improperly seeks confidential and protected information. Thus, it should and must be quashed.

## II.    ARGUMENT AND AUTHORITIES

The 2019 Subpoena suffers from profound defects that require this Court to quash it. First, it poses an undue and extreme burden on non-party SBA in a manner that is inapposite and contrary to Fed. R. Civ. P. 45(d)(3)(A)(iv), as discussed further below. Even if these requests were otherwise proper, the 2019 Subpoena should also be quashed because it fails to allow SBA a reasonable time to comply in accordance with Fed. R. Civ. P. 45(d)(3)(A)(i). These flaws each require this Court to quash the 2019 Subpoena. Finally, this Court should quash the 2019 Subpoena

---

[2] Plaintiff has filed additional Second Amended Complaints [Dkt. Nos. 124 and 126] as sealed patent documents, which are unavailable to SBA.

pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i) because it is unduly invasive and seeks trade secrets and/or other confidential commercial information of non-party SBA.

**A.       The 2019 Subpoena Subjects SBA to an Undue Burden**

Further, the 2019 Subpoena must also be quashed because it subjects SBA to an undue burden. Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), a subpoena which imposes an undue burden on a non-party must be quashed. As the moving party, SBA bears the burden of proving that compliance with the subpoena would be unreasonable and oppressive. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). However, Fed. R. Civ. P. 45(d)(1) also imposes an obligation on Plaintiff as the issuing party to "take reasonable steps to avoid imposing undue burden or expense" on non-party SBA. Determining whether the claimed burden is "undue" requires the court to weigh the issuing party's needs against the recipient's burden. *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010)).

Here, the factors weigh heavily against Plaintiff as the issuing party. Although a more fulsome analysis is set forth below, perhaps most notably, Plaintiff seeks to have non-party SBA undertake a time-consuming and costly search through over one hundred thousand (100,000) documents that would be largely in the possession of the Defendants in this case. Non-party status is a significant factor that courts must consider when assessing whether an undue burden exists. *WM High Yield v. O'Hanlon*, 460 F. Supp.2d 891, 895-96 (S.D. Ind. 2006).

To determine whether a subpoena presents an undue burden, Courts typically consider the following factors: (1) the particularity with which the party describes the requested documents; (2) the time period covered by the request; (3) the burden imposed; (4) whether compliance with the subpoena implicates privacy interests; (5) expense and inconvenience to the non-party; (6)

4

relevance of the information requested; (7) whether the sought-after evidence is more readily available from another source; (8) the need of the party for the documents; and (9) the breadth of the document request. *See Wiwa.*, 392 F.3d at 818 (5th Cir. 2004); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998); *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927-32 (7th Cir. 2004); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002)).

### 1.    Plaintiff Does Not Describe the Requested Documents with Particularity

Plaintiff failed to define key terms or otherwise describe what is sought with particularity, causing an undue burden and increasing the difficulty of any search for responsive documents. For instance, Request Nos. 2 and 3 vaguely call for "[d]ocuments sufficient to determine" for each of SBA's towers the "physical or legal requirements or restrictions" relating to amounts invoiced (Request No. 2), and average cell site rental or sales costs broken down by various site characteristics (Request No. 3), yet Plaintiff has provided inadequate guidance as to what documents would be sufficient to determine these undefined categories of information. Additionally, Request Nos. 3 and 4 seek information about the "maximum capacity" of SBA's towers, yet it is unclear what "capacity" Plaintiff seeks information regarding. Request No. 3 provides the examples of "maximum towerload or maximum windload," yet these examples are not reiterated in Request No. 4. "Capacity" could also be evaluated in other contexts. Further, Request No. 4 seeks "maximum capacities" (plural) for each tower, yet also asks for "the percentage of maximum capacity" (singular) not in use, so it is unclear whether Plaintiff seeks information regarding "capacity" in one context or multiple contexts. This factor further evidences the undue burden placed on SBA by the 2019 Subpoena.

### 2.    Plaintiff Fails to Limit Its Request to a Reasonable Time Period

Further, Plaintiff failed to limit Requests No. 4 and 5 to any defined time period; consequently, SBA is left to assume is has been asked to produce all responsive documents available across its entire corporate history. SBA was founded in 1989. Exhibit B at ¶2. For a corporation of SBA's size, it is an immense undertaking and an undue burden to search through *almost 30 years of documents*. *Id.* at ¶2, 11-12.

Plaintiff's complaints establish that the patents at issue were issued in 2005 or later. *See* First Amended Complaint for Patent Infringement [Dkt. No. 100] at ¶46, 60, 74, 88, 102, 116, 130, 144, 158, and 168; Second Amended Complaint for Patent Infringement [Dkt. No. 125] at ¶52, 70, 88, 106, 124, 142, 160, 174, 188, and 198. Plaintiff has plainly made no effort to reasonably limit the time frame applicable to its requests. Contrary to Fed. R. Civ. P. 45's mandate that a party issuing a subpoena avoid imposing an undue burden or expense upon a non-party, Plaintiff did not even attempt to limit its requests to the years during which it held the patents in controversy. Courts have required subpoenas to non-parties in patent infringement matters to include time parameters in requests for documents. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527 (N.D. Fl. 2013)(requiring requesting party to add time parameters to its document requests to a non-party in a patent infringement case).

Plaintiff limited Requests No. 1, 2, and 3 to the "Relevant Period," but neglected to define this term in the 2019 Subpoena. While Plaintiff's counsel subsequently clarified that the "Relevant Term" was intended to be January 1, 2012 to present, requiring SBA to review documents spanning over seven years still implicates an unreasonable volume of information. SBA should not have to shoulder the undue burden posed by Plaintiff's failure to limit its requests to a reasonable time period.

3. **The Burden Imposed on SBA to Search for and Produce the Volume of Documents Requested is Undue and Oppressive**

The sheer volume of documents that Plaintiff seeks from non-party SBA is staggering and oppressive. By way of example, Request No. 1 seeks "[c]ontracts between you and any Defendant (including any master agreements, statements of work, modifications, or subsidiary agreements under a master agreement) entered into or in effect for the Relevant Period." As written, this request essentially seeks *every contract and agreement* SBA has with any Defendant to lease tower space. Exhibit B at ¶7-8. In other words, this request asks non-party SBA to produce contracts and agreements with SBA's four biggest customers as to over **sixteen thousand (16,000)** tower sites for more than seven years. *Id.* at ¶2-9. Defendants are tenants to over 27,000 current leases with SBA, and were tenants on thousands of terminated or expired previous leases. *Id.* at ¶6. It is common for SBA to enter into multiple amendments with wireless carriers for each of the leases. *Id.* SBA likely possesses hundreds of thousands of documents that would be considered responsive to Request No. 1 alone. *Id.* at ¶9.

Request No. 5, which seeks "documents reflecting or mentioning that any Defendant was seeking a more sustainable, cost effective or cheaper solution for cell site real estate including materials reflecting demands or negotiations with or on behalf of any Defendant, in which a defendant's desire for a lower price or cheaper pricing structure was conveyed," suffers from similar issues. The number of documents involved in negotiating the over 27,000 current leases plus the additional terminated or expired previous leases since January 1, 2012 is logically greater than the resulting number of total contracts, as each contract is the culmination of an extensive negotiation process. Thus, Request No. 5 seeks an even more unduly burdensome and astounding number of documents than Request No. 1.

Likewise, Request No. 3, which calls for "average cell site rental or sales costs" broken down by a variety of characteristics including geographic location, and Request No. 4, which seeks

maximum capacities and the percentage of maximum capacity remaining unused for cell sites to which invoicing documents sought by Request No. 2 relate, also seek a burdensomely voluminous number of documents. Request No. 4 seeks documents related to every tower any Defendant has been a tenant on over the past seven-plus years (likely the vast majority if not all of SBA's over 16,000 domestic towers), and Request No. 3 is not even limited to towers on which Defendants have been tenants. Clearly, the volume of documents the 2019 Subpoena seeks from non-party SBA is evidence that the 2019 Subpoena is unduly burdensome, and compliance would foist undue costs on the non-party.

4.     **The 2019 Subpoena Seeks Confidential Information and Invades the Privacy of SBA's Confidential Information**

Request No. 3 is a prime example of how the 2019 Subpoena implicates SBA's privacy interests. It seeks confidential, proprietary information regarding the rental rates SBA charges *all* of its tenants, not just the Defendants in this matter. Plaintiff further increases the burden on SBA by asking SBA to produce documents demonstrating "average cell site rental or sales costs broken out by the following characteristics: type of cell site (tower or rooftop), geographic location of the cell site, setting of the cell cite (urban. suburban, or rural), or dimensions and capacity (e.g., maximum towerload or maximum windload)." Further, the contracts and agreements Request No. 1 seeks show the location of ground leases, perpetual easements, and other information that could be leveraged by competitors to SBA's detriment. Additionally, Request No. 4 seeks documents detailing the maximum capacity of SBA's towers, as well as the percentage of maximum capacity unused. This information is highly confidential, and disclosure of detailed information as to SBA's tower capacities could significantly impair SBA's ability to compete. The undue burden and expense imposed on non-party SBA to comply with such a request outweighs any likely benefit, especially in the absence of any evidence of the relevance of such sensitive data in such a specific

format.

### 5. The 2019 Subpoena Imposes Unchecked Expense and Undue Burden on Non-Party SBA

Reviewing and potentially producing hundreds of thousands of documents would be an undue burden for SBA. Because of Plaintiff's failure to take reasonable steps to narrow its requests and/or seek documents from other sources, SBA would be subject to unchecked expense were it required to conduct the requested search. Considering that these requests seek documents related to the vast majority of SBA's 16,000 tower sites, a search of this magnitude will also be disproportionately disruptive to SBA's business operations. *See* Exhibit B. Numerous personnel across multiple departments would be required to divert time from their regular business activities in order to search for the documents at issue. *Id.* at ¶11. The cost of transmitting and hosting the data alone will be incredibly high, to say nothing of the legal fees that would be incurred in a document review of this size. Even if Plaintiff ultimately only seeks to have SBA produce a smaller amount of documents "sufficient" to demonstrate certain data points, SBA will still first have to search through a staggering volume of documents to find the items evidencing that data. To ask a non-party to disrupt its business to the level necessary for an adequate search and then incur the technical and legal fees necessary to produce the documents certainly rises to the level of an undue burden.

### 6. The Relevance of the Information Requested Appears to be Minimal

There appears to be no connection between the documents the 2019 Subpoena requests from SBA and the evidence Plaintiff would need to prove that its antenna patents have been infringed upon. SBA is not in the business of buying or owning communication equipment. Exhibit B at ¶4. It simply leases space on its towers for wireless carriers to install their own equipment. *Id.* at ¶3-4. Thus, as an entity that does not own or directly use antennas, it is highly unlikely that SBA

would have information relevant to Plaintiff's patent infringement claims even if Plaintiff were to propound a properly crafted request. Moreover, Plaintiff repeatedly seeks documents and information related to SBA's sites without restricting the term to mean sites where antennas of a similar type to those at issue are in use. *See* Exhibit A at Request Nos. 2-4. Contracts, documents, and information regarding sites housing antennas with no similarity to the antennas whose patents are at issue clearly do not have any relevance to this case. Further, Request No. 3 seeks broad-sweeping categories of documents regarding SBA's tower sites without regard for whether the documents requested have any connection to the Defendants in this case or the patents at issue. Additionally, Request No. 5 seeks documentation of any efforts of Defendants to seek cost savings regardless of whether those requested savings have any connection to the antennas utilized on the tower sites they lease. The irrelevance of Plaintiff's requests is one of many reasons why the 2019 Subpoena is unduly burdensome.

### 7.      The Requested Documents Are More Readily Available From Other Sources

All conceivably relevant documents requested are available from other sources. The very first request to non-party SBA seeks "contracts between you and *any* Defendant[…]," which almost by definition calls for documents that would be in the possession of Defendants, and which can and should be discovered from each Defendant. Plaintiff may propound requests for the documents sought by Request No. 1 directly to Defendants. In fact, counsel for Plaintiff has admitted that they are still working to obtain these documents from Defendants, yet has not provided any clarity as to the extent to which those efforts have been successful. Plaintiffs could clearly minimize the burden on non-party SBA by providing clarity as to the extent to which they have been able to obtain this information from Defendants (thus allowing non-party SBA to narrow the scope of any search), yet they have not done so.

Likewise, Defendants should have the "documents sufficient to show the amounts [SBA]

invoiced to each Defendant" sought by Request No. 2. Remarkably, Request No. 5 even includes "materials reflecting demands or negotiations with or on behalf of any Defendant." Clearly, Plaintiff could again request those materials from Defendants, who would presumably have all such documents and who are parties to this case. When a party requesting a subpoena has failed to show that it has attempted to obtain documents from appropriate parties to the case before seeking those documents from non-parties, this factor weighs in favor of a finding that the request places an undue burden on the non-party. *See WM High Yield*, 460 F.Supp.2d at 896. Furthermore, as to information regarding the characteristics of SBA's sites sought by Request No. 4, much of this information is equally available to Plaintiff from the real property records. There is no discernable reason why as a non-party, SBA should be required to endure the undue burden and expense of producing documents Plaintiff can obtain from other sources.

**8.      There Is No Need for SBA to Produce the Requested Documents**

To the extent the 2019 Subpoena seeks documents that Plaintiff cannot obtain from Defendants or that are not publicly available, there is no need for the requested documents to be produced in this case in order for Plaintiff to prove its claims. By way of example, Plaintiff's request for documents reflecting SBA's revenues are clearly unnecessary since Plaintiff does not contend that SBA has infringed upon any of the patents at issue. Further, Request No. 4 seeks documents evidencing the characteristics of SBA's sites such as "tower vs. rooftop; urban, suburban or rural; dimensions; maximum capacities", targeting physical information about SBA's towers rather than any relevant information about the technical specifications of any equipment tenants may install on those towers. Plaintiffs simply do not need the information they seek from SBA to advance their patent infringement claims. It would be unduly burdensome to require non-party SBA to endure the time and expense of responding to the 2019 Subpoena in order for Plaintiff to obtain documents that are not necessary to prove its claims.

11

9.      **The 2019 Subpoena is Facially Overbroad**

Finally, a court may find that a subpoena presents an undue burden when the subpoena is facially overbroad. *Wiwa*, 392 F.3d at 818. The absence of time parameters can render a request facially overbroad. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 527 (N.D. Fl. 2013)(holding document requests to a non-party lacking a time parameters were facially overbroad in a patent infringement case). Request No. 5 seeks "[a]ny documents reflecting or mentioning that any Defendant was seeking a more sustainable, cost effective or cheaper solution for cell site real estate including materials reflecting demands or negotiations with or on behalf of any Defendant, in which a defendant's desire for a lower price or cheaper pricing structure was conveyed," without limitation. This request essentially seeks all documents related to any negotiations SBA has ever had with the four Defendants (who constituting the overwhelming majority of the wireless carrier market) for the almost thirty years SBA has been in business. *See* Exhibit _ at  ¶2-6. This includes negotiations for over 27,000 active leases as well as the tens of thousands of additional terminated or expired leases. *See id.* Thus, Request No. 5 is facially overbroad because it lacks any time limitation. Request No. 3 also lacks any time limitation and thus is also facially overbroad.

While perhaps not quite as wide-sweeping as Request No. 5, Request Nos. 2 and 4 also pose grossly overbroad requests for SBA's revenues and documents establishing various characteristics of SBA's sites regardless of whether those documents have any relation to Plaintiff's patent infringement claims. The overbreadth of the 2019 Subpoena is further evidence that it is unduly burdensome.

B.      **The 2019 Subpoena Does Not Allow SBA a Reasonable Time to Comply**

Even if these requests were otherwise proper, the 2019 Subpoena must be quashed pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i) because it fails to allow SBA a reasonable time to comply. SBA

was served with the 2019 Subpoena on March 1, 2019, requiring compliance via production of documents no later than March 14, 2019. On March 12, 2019, Plaintiff attempted to clarify its requests, however, this "clarification" essentially required SBA to re-evaluate its ability to produce a set of data points it could not have determined Plaintiff desired from the requests as stated in the 2019 Subpoena. While Plaintiff did grant SBA an extension of four days up to and including March 18, 2019, this still did not provide SBA with a reasonable time to comply.

Reasonableness of the time allowed for compliance is generally judged depending on the underlying circumstances. *Verisign, Inc. v. XYZ.com, LLC,* 2015 WL 7960976 at *3 (D. Del. Dec. 4, 2015). While many courts have held fourteen days for compliance is presumptively reasonable, this presumption is grounded in the allowance of fourteen days for objections rather than a belief that fourteen days is generally sufficient to analyze and produce documents. *See In re Rule 45 Subpoena Issued to Cablevision Systems Corp. Regarding IP Address 69 .120.35.31,* No. MISC 08–347(ARR)(MDG), 2010 WL 2219343 at *5 (E.D.N.Y. Feb. 5, 2010) (collecting cases finding fourteen days' notice reasonable and noting one of the reasons for the 1991 amendments to Fed. R. Civ. P. 45 was to lengthen time to object from ten days to fourteen); *Verisign*, 2015 WL 7960976 at *3 (stating that courts have found a seven-day compliance window unreasonable, especially in light of the fourteen day objection period, and holding the five day period at issue was unreasonable). Compliance windows of less than fourteen days have generally been found to be unreasonable. *See, e.g., Hall v. Louisiana,* C.A. No. 12–657–BAJ–RLB, 2014 WL 1652791, at *13 (M.D. La. Apr. 23, 2014)(finding periods of time for compliance with a variety of non-party subpoenas ranging from nine to twelve days were all unreasonable).

In light of Plaintiff's revisions to their requests on March 12, even with the extension of SBA's compliance deadline to March 18, SBA essentially had only six days to evaluate these

amended requests. As detailed previously, SBA will have to review hundreds of thousands of documents in order to identify the information Plaintiff seeks. It is unreasonable to expect non-party SBA to incur the undue burden and expense required to complete this search in the time provided. Further, Plaintiff served the 2019 Subpoena with full awareness of the volume of documents potentially implicated. SBA and Plaintiff had extensive discussions on this topic in October of 2018, and Plaintiff also received a copy of the October 5, 2018 Declaration of Jason Silberstein, which details the oppressive burden that would be placed on SBA if it were to undertake the type of search involved. *See* Exhibit B at ¶6-12; Exhibit D. The circumstances here establish that it would be unreasonable for non-party SBA to complete the unduly burdensome search contemplated in the time provided. Accordingly, the 2019 Subpoena must be quashed.

**C.     The Subpoena is Procedurally Deficient**

An important facet of Rule 45 is to restrict geographically the scope of production. Accordingly, pursuant to Fed. R. Civ. P. 45(c)(2)(A), a subpoena may not command an entity to produce documents more than 100 miles from where it "resides, is employed, or regularly transacts business in person." SBA's principal place of business is its Boca Raton, Florida headquarters. Exhibit B at ¶2. Indeed, SBA was served in Palm Beach Gardens, Florida, over one thousand (1,000) miles away from the place of compliance. *See* Exhibit A. The 2019 Subpoena commands SBA "to produce [documents] at the time, date, and place set forth below," which is Kobre Kim's offices in New York, NY. *See id.* Any documents Plaintiff seeks would be maintained at SBA's principal place of business in Florida. No employee within a 100-mile radius of New York, NY possesses a degree of control over these documents which would make it appropriate for a New York court to enforce a subpoena as to documents located in Florida. *See Hallamore Corp. v. Capco Steel Corp.,* 259 F.R.D. 76, 80 (D. Del. 2009)("When dealing with corporations located in

multiple states, the proper inquiry for determining the validity of a subpoena for the production of documents is 'whether the agent for service of process possesses the degree of control over the documents which would make it appropriate to enforce a subpoena over a corporation from a court in one state, when the corporation's documents are located in another state.'")(quoting *City of St. Petersburg v. Total Containment, Inc.*, Misc. Case No. 07-191, 2008 WL 1995298 at *3 (E.D. Pa. May 5, 2008)). Thus, the 2019 Subpoena purports to require SBA to produce documents, ESI, or tangible things beyond the geographical limits of Fed. R. Civ. P. 45(c)(2)(A), indeed more than ten times further. This is contrary to the terms of the Rules. This procedural deficit requires that the 2019 be quashed pursuant to Fed. R. Civ. P. 45(d)(3)(A)(ii).

**D.      The 2019 Subpoena Seeks Confidential, Trade-Secret Information**

A Court may also quash a subpoena that requires the recipient to disclose "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). When determining whether the information at issue is the type of confidential information this Rule was designed to protect, Courts often assess whether it is important proprietary information, whether the non-party has consistently endeavored to keep such information confidential, and whether release of the information would unfairly harm the disclosing party's ability to compete in the marketplace. *See Innovative Therapies, Inc. v. Meents,* 302 F.R.D. 364, 380 (D. Md. 2014); *Felicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 7 (D. D.C. 2006). Once the non-party establishes that the request seeks trade secret and/or confidential commercial information, the burden then shifts to the requesting party to demonstrate the necessity and relevance of the requested information. *See Innovative Therapies*, 302 F.R.D. at 380. If the requesting party cannot meet its burden, the motion to quash the subpoena under Fed. R. Civ. P. 45(d)(3)(B)(i) is typically granted.

SBA's contracts and agreements with its tenants often contain trade secrets and/or other confidential commercial information, including but not limited to information regarding the terms of SBA's leases with the ground owners and the terms SBA has agreed to with each tenant. Exhibit B at ¶12. This commercially sensitive information is important proprietary information which SBA has historically sought to keep confidential. *Id.* at ¶9-13. The 2019 Subpoena requests SBA produce essentially **all** of its contracts and agreements with Defendants, which include the locations of its tower sites and the terms of its leases of tower space to Defendants as well as SBA's leases with the ground owners. *See* Exhibit A at Request No. 1. Plaintiff also seeks "[d]ocuments sufficient to show the amounts you invoiced to each Defendant[…] and the date of such invoices for the Relevant Period," essentially asking SBA to disclose its revenues across a more than seven year time span, breaking down the evolution of what it charged each Defendant across that time period, possibly by site.[3] *See* Exhibit A at Request No. 2. But the invasiveness of Plaintiff's requests does not stop there. Request No. 4 asks SBA to produce documents describing the characteristics of its cell sites down to the "maximum capacity" and "the percentage of maximum capacity that remained unused" for each site. Plaintiff has essentially instructed SBA to detail its maximum capacity to lease tower space to wireless carriers and to explain the extent to which that capacity is in use on a tower-by-tower basis. The competitive consequences to SBA were it required to produce such granular, detailed information outlining precisely how it currently generates revenue and where the potential for growth lies could be vast. Exhibit B at ¶13.

When the 2019 Subpoena's requests may not be specifically targeting such sensitive information, they sweep in such broad strokes that it would be impossible for SBA to fully produce

---

[3] Plaintiff's request for "documents sufficient to show" is unclear. In the absence of summary documents, SBA would be forced to either disclose every individual invoice, thus disclosing highly confidential information, or create a document that does not exist in order to avoid such disclosure.

responsive documents without also turning over trade secrets and/or confidential commercial information. For example, Request No. 5 seeks "[a]ny documents reflecting or mentioning that any Defendant was seeking a more sustainable, cost effective or cheaper solution for cell site real estate including materials reflecting demands or negotiations with or on behalf of any Defendant. in which a defendant's desire for a lower price or cheaper pricing structure was conveyed." A full production of all responsive documents would inescapably require SBA to turn over documents containing trade secrets and/or confidential commercial information. Exhibit B at ¶10.

According to the Advisory Committee, Rule 45(d)(3)(B) identifies "circumstances in which a subpoena should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness." Plaintiff has not and cannot show a substantial need for the requested documents. As detailed above, many of the documents Plaintiff seeks from SBA (such as contracts involving Defendants and communications with Defendants) can be acquired from other sources.[4] Plaintiff has provided SBA with no indication that it has made an adequate effort to pursue these documents from Defendants. Plaintiff has implied it received some documents from Defendants responsive to its requests to SBA, but Plaintiff has not narrowed its requests to account for documents already received. The vast majority of the remaining documents have nothing to do with Plaintiff's claims. As previously explained, requiring SBA to search for and produce these irrelevant documents would impose a significant and undue burden. Moreover, requiring SBA to produce such sensitive, confidential information would cause severe harm. Thus, the 2019 Subpoena should be quashed.

## III.    REQUEST FOR ATTORNEYS' FEES

Non-party SBA has incurred significant costs and attorneys' fees in addressing Plaintiff's

---

[4] SBA reserves the right to seek a protective order as to such information should Plaintiff demonstrate a substantial need for the information to be produced by SBA or Defendants.

2018 Subpoena and 2019 Subpoena. "A Court determining whether sanctions are appropriate under Rule 45(c)(1) should examine whether the subpoena served an improper purpose and whether it was unduly burdensome." *Kenney, Becker LLP v. Kenney*, No. 06 Civ. 2975(JSR), 2008 WL 681452, at *2 (S.D.N.Y. Mar. 10, 2008). "Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash." *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ.1382 RWS, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 30, 2003); *see also American Int'l Life Assurance Co. v. Vasquez*, No. 02 Civ. 141, 2003 WL 548736, at *2–3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information). As established previously, the 2019 Subpoena suffers from many defects which require it be quashed. Frustratingly, many of these defects mirror defects with the 2018 Subpoena.

A key reason SBA moved to quash the 2018 Subpoena was that many of the hundreds of thousands of documents Plaintiff sought were equally available from Defendants, and Plaintiff had not made an exhaustive effort to obtain these documents from Defendants. Plaintiff waited almost four months to re-raise any requests to SBA, and although the requests were revised, the 2019 Subpoena still essentially sought many of the same documents and includes many of the same flaws which require it be quashed. Additionally, while Plaintiff has implied it has pursued these documents from Defendants, it has not narrowed its requests to seek just the subsets of documents it has not been able to obtain from Defendants.

Moreover, Plaintiff seeks these documents with clear knowledge of the undue burden this search would impose upon SBA. *See* Exhibit D. Since October 22, 2018, Plaintiff has been in

possession of the October 5, 2018 Declaration of Jason Silberstein, which provided extensive detail as to the undue burden Plaintiff's requests would impose. *See id.* Further, even if these requests were proper, Plaintiff likely knew for months it would seek some or all of these documents from SBA, yet waited to seek them until shortly before its discovery deadline, leaving SBA with insufficient time to comply. Just as in 2018, Plaintiff specified a place of compliance in the 2019 Subpoena that is beyond the proper geographic scope of Fed. R. Civ. P. 45(c)(2)(A). The 2019 Subpoena marks the second time in six months that Plaintiff has served SBA with a non-party subpoena containing three glaring defects which require it be quashed under Fed. R. Civ. P. 45(d)(3)(A). Moreover, much of the information yet again requested impermissibly encompasses SBA's confidential, commercially sensitive information. Accordingly, SBA seeks an award of its costs and attorneys' fees as a sanction for Plaintiff's failure to take reasonable steps to avoid imposing undue burden or expense on non-party SBA pursuant to Fed. R. Civ. P. 45(d)(1).

## IV.    PRAYER

Accordingly, non-party SBA Communications Corporation respectfully requests that this Court grant its Motion to Quash Plaintiff's Non-Party Subpoena, order Plaintiff Fractus, S.A. to pay SBA's attorneys' fees and costs incurred in moving to quash both the 2019 Subpoena and the 2018 Subpoena pursuant to Fed. R. Civ. P. 45(d)(1), and grant SBA all other relief to which it is entitled.

Respectfully submitted,

**HOLLAND & KNIGHT, LLP**

By: */s/ Duvol Thompson*
Duvol Thompson
New York Bar No. 4958591
duvol.thompson@hklaw.com
31 West 52nd Street

12th Floor
New York, NY 10019
(212)513.3200 (telephone)
(212) 385.9010 (facsimile)

Charles T. Jeremiah *(pending admission pro hac vice)*
Texas Bar No. 784338
charles.jeremiah@hklaw.com
Michelle J. Haws *(pending admission pro hac vice)*
Texas Bar No. 24104028
michelle.haws@hklaw.com
1100 Louisiana Street, Suite 4300
Houston, TX 77002-5227
713-821-7000 (telephone)
713-821-7001 (facsimile)

**ATTORNEYS FOR NON-PARTY SBA COMMUNICATIONS CORPORATION**

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with counsel for Plaintiff Fractus, S.A. extensively via email and via telephonic conferences held on March 8, 2019 at 1:30 p.m. Central Time/2:30 p.m. Eastern Time and March 12, 2019 at 3:00 p.m. Central Time/4:00 p.m. Eastern Time. Despite extensive discussion of the issues with this 2019 Document Subpoena, the parties were unable to resolve the disputed issues presented in this motion. Plaintiff's counsel has indicated that Plaintiff is opposed to the quashing of its subpoena and the relief sought herein.

*/s/ Charles T. Jeremiah*_____
Charles T. Jeremiah

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record for the interested parties in accordance with the Federal Rules of Civil Procedure via e-mail on this the 18th day of March, 2019.

*/s/ Charles T. Jeremiah*_____
Charles T. Jeremiah
