UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRACTUS, S.A.,<br><br>                 *Plaintiff*,<br><br>v.<br><br>AT&T MOBILITY LLC,<br><br>                 *Defendant.* | Misc. Action No. 1:19-00130 |

**REPLY MEMORANDUM IN SUPPORT OF FRACTUS S.A.'S
CROSS-MOTION TO COMPEL COMPLIANCE WITH RULE 45 SUBPOENA**

Fractus, S.A. ("Fractus") submits this reply memorandum in further support of its cross-motion to compel SBA Communications Corporation ("SBA") to comply with the Rule 45 Subpoena that Fractus served on SBA on March 1, 2019 (the "Subpoena"). For the reasons set forth below, in Fractus' Combined Memorandum (ECF No. 7),[1] and in the supporting declarations and exhibits submitted therewith (ECF Nos. 8 – 10), Fractus respectfully requests that the Court grant Fractus' cross-motion and order SBA to produce the Data Points without further delay.

**INTRODUCTION**

In its Combined Memorandum, Fractus demonstrated several of the reasons why SBA cannot justify its refusal to produce the two Data Points at issue. SBA's Reply Memorandum in Support of Motion to Quash Fractus' Subpoena and Opposition to Fractus' Cross Motion to Compel Compliance with Rule 45 Subpoena (ECF No. 20) ("SBA Reply") does nothing to undermine that showing. Emotion is no substitute for facts, and these are the facts:

---

[1] All capitalized, but undefined, terms used in this reply memorandum have the same meanings assigned in Fractus' Combined Memorandum in Support of Fractus' Opposition to Non-Party SBA's Motion to Quash and in Support of Fractus' Cross-Motion to Compel Rule 45 Subpoena (ECF No. 7) "Fractus' Combined Mem.").

1

- SBA rents cell sites to the Carrier Defendants, on which the Carrier Defendants place the infringing Multiband Base Station Antennas. Fractus' Combined Mem. at 1-2, 8, 19-20.

- Fractus seeks from SBA two pieces of information relating to those rented cell sites, for the period from April 9, 2012 through the present: (i) the maximum equipment burden of the cell sites; and (ii) the amount of that space that remained unused (or, conversely, that was used) (the "Data Points"). Fractus' Combined Mem. at 2.

- The Data Points are objective proof that demonstrates the cost savings that the Carrier Defendants reaped as a result of having used the infringing antennas. *See, e.g.,* Fractus' Combined Mem. at 15-16. They are thus critical aspects of establishing damages. *See id.* at 13-16 (establishing relevancy and proportionality).

- SBA has the Data Points. *See generally* SBA Reply at 1-28 (failing to deny that SBA has custody, possession or control over Data Points); Supplemental Declaration of Jason Silberstein (ECF No. 20-9) ("Supplemental Silberstein Declaration") at 1-2 (failing to swear that SBA lacks access to Data Points); *see also* Fractus' Combined Mem. at 17-18.

- The Carrier Defendants apparently do not. *See* Fractus' Combined Mem. at 14, 22; *contra* SBA Reply at 10, 12, 21.

- A stringent protective order would govern SBA's production of the Data Points. Fractus' Combined Mem. at 16-17.

SBA has not addressed this record. Instead, SBA regurgitates conclusory assertions of "undue burden" while quibbling over typographical errors and attempting to refute document requests that Fractus has withdrawn. *See, e.g.,* SBA Reply at 7, 12. There is thus little that merits a response. There are, however, several points that underscore why the Court should order SBA to produce the Data Points.

As an initial matter, if anyone has engaged in "bullying" or "gamesmanship," it is SBA; not Fractus. It is SBA that twice initiated motions practice without first completing the meet and confer process. *See, e.g.,* Chan Decl., Ex. 2 (ECF No. 10-2). It is SBA that threatened to seek fees and costs if Fractus pursued the discovery it so crucially needs. *See* Cole Decl. ¶ 9. And it is SBA that, without merit, refuses to produce a single document notwithstanding the reasonable

2

steps that Fractus has taken to reduce any purported burden. Fractus should not be made to bear the costs of that strategy. [2]

Substantively, it bears repeating that at every turn, Fractus has taken steps to reduce any purported burden on SBA, *see* Part I below, while SBA has failed to articulate any genuine basis for its conclusory assertions of "undue burden," *see* Part III below. Among other things, SBA has yet to establish that the Data Points are even "sensitive," much less explain why the protective order does not sufficiently protect SBA's so-called "trade secrets," *see* Part II below. SBA's attempt to challenge the procedural sufficiency of the Subpoena is likewise meritless, because SBA indisputably transacts business within 100 miles of Manhattan and, in any event, the Subpoena empowers SBA to comply by mail, *see* Part IV below. Finally, SBA's inability to understand Fractus' damages model does not undermine the nature of the Data Points as critical evidence; nor is Fractus required to essentially provide advanced disclosure of its expert reports in order to obtain the Data Points. *See* Part V below. For each of these reasons, as well as the ones set forth in Fractus' Combined Memorandum, supporting declarations and exhibits, the Court should grant the cross-motion.

## ARGUMENT

I. **FRACTUS HAS REPEATEDLY TAKEN REASONABLE STEPS TO REDUCE ANY BURDEN ON SBA**

There is nothing improper about narrowing the scope of a document subpoena. *Contra* SBA Reply at 22, 27. That is the purpose of meeting and conferring, and it evidences the "reasonable steps" that Fractus has taken to reduce any burden on SBA. *See* Fractus' Combined

---

[2] "SBA's emergency," *see* SBA Reply at 14, 19, is less an "undue burden" or the result of any purported "failure [by Fractus] to plan" than it is the result of SBA's refusal to meet and confer properly in connection with the original subpoena served in October 2018. Again, the Data Points are derived from the original subpoena. It is disingenuous for SBA to have refused to produce anything in 2018 on the basis that Fractus should first pursue the discovery through the Carrier Defendants, and to now attempt to rationalize a new refusal to produce that same discovery based on the time that it took for Fractus to do just that. *See, e.g.,* SBA Reply at 24.

Mem. at 23-24; *contra* SBA Reply at 6, 10, 13-16.  Plainly put, the Data Points are a subset of the narrowed requests; the narrowed requests are a subset of the Document Subpoena; and the Document Subpoena is a subset of the original subpoena served in October 2018.  *Compare* Cole Decl., Ex. 6, *with* Dockery Decl., Ex. 2 at 9, Document Request No. 4, *and* Chan Decl., Ex. 1 at 9-10, Document Request No. 4.  With accurate context, the Data Points therefore evidence Fractus' ever ***shrinking*** demands; not "ever shifting" ones.  *Contra* SBA Reply at 22, 27.  SBA is wrong to suggest otherwise.  *See* SBA Reply at 10, 14-16, 17.  The cross-motion is proper and the Court should grant it. [3]

## II. THE PROTECTIVE ORDER EVISCERATES ANY CONCERN ABOUT "COMPETITIVE HARM"

SBA has never established that the Data Points are "confidential commercial information," let alone "inescapabl[e] . . . trade secret[s]."  *Contra* Suppl. Silberstein Decl. (ECF No. 20-9) ¶ 6.  SBA has merely parroted those phrases in various forms.  *See id.; see also* SBA Reply 20-22.  But "[s]aying it is so does not . . . make it so, no matter how many times it is repeated," *Chrysler Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C 5273, 1996 WL 509888, at *3 (N.D. Ill. Sept. 4, 1996), and courts routinely allow discovery of third-party trade secrets where, as here, a suitable protective order governs the production.  *See, e.g., Truswal Sys. Corp.*

---

[3] In several places, SBA suggests that it was "mislead [sic]" during the meet and confer process.  *See* SBA Reply at 13-15.  That is untrue.  Regrettably, SBA's statements also reflect that SBA did not read the Subpoena carefully, did not pay close attention to the March 12, 2019 e-mail from Fractus' counsel, and did not listen when Fractus' counsel spoke.  As just one example, SBA contends with respect to one of the withdrawn requests that "[i]t is very peculiar that Fractus never thought to mention to SBA the names of the carriers to whom it is referring when that information has been known to its counsel for some time."  *See* SBA Reply at 16.  But the Subpoena itself identified the names of each Carrier Defendant, *see* Dockery Decl., Ex. 2 at 5 ¶ 2, and SBA could easily have obtained the information in the news articles the same way Fractus did: via Google.  Fractus also offered in its March 12, 2019 e-mail to supply SBA with search terms.  *See* Cole Decl., Ex. 6.  If SBA had accepted that offer, then those terms would have included the names of each Carrier Defendant.  In a similar vein, SBA contends that "like the Data Points, several of [Fractus'] Requests in the 2019 Subpoena failed to state that the Request was limited to the Relevant Time Period."  SBA Reply at 19.  This overlooks the fact that Fractus specifically identified the applicable Relevant Period in the March 12, 2019 email.  *See* Cole Decl., Ex. 6.  Fractus will not burden the Court by correcting each of the several other errors in SBA's characterization of the oral and written conferences between attorneys, but these examples are illustrative.

*v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987); *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024-25 (Fed. Cir. 1986); *Aquastar Pool Prod. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, at *3-4 (D. Ariz. Jan. 17, 2019). SBA has yet to identify any protection that it "needs," but that the protective order omits. For this reason, too, the Court should grant the cross-motion.[4]

### III. THE PARTIES AGREE THAT SBA IS BEST POSITIONED TO PRODUCE THE DATA POINTS WITH RELATIVE EASE

SBA now concedes that "SBA is best positioned to access information about its own towers." SBA Reply at 22. Nowhere in SBA's reply or the Supplemental Silberstein Declaration does SBA contend that it lacks access to the Data Points; nor could it credibly do so. SBA is a landlord and the Data Points directly relate to how much overall space SBA had to rent on certain cell sites; how much of that space was actually rented; and how much of it was not.

The Supplemental Silberstein Declaration does not establish any "undue burden." Among other things, it fails to (i) explain how or why it would be "significantly disruptive" for SBA to print a report that reflects the Data Points, *see* SBA Reply at 23; (ii) provide any objective or quantifiable measure of the "palpable disturbance" that producing the Data Points would supposedly cause, *see, e.g.,* Suppl. Silberstein Decl. ¶ 8; or (iii) explain why Fractus' offer to pay the reasonable costs of copying the relevant pages from the appropriate files would not mitigate such concerns. The law demands a good bit more. *See, e.g., State Farm Mut. Auto Ins. Co. v. Elite Health Centers, Inc.*, No. 2:16-CV-13040, 2018 WL 4927171, at *6 (E.D. Mich. Oct.

---

[4] As SBA knows, the Agreement to Withdraw the 2018 subpoena ("Agreement") has nothing to do with the protective order. *Contra* SBA Reply at 9, 21-22. The protective order does not apply to the Agreement, and there is nothing in the Agreement that would qualify as "confidential" or "highly confidential" material. SBA's own treatment of the Agreement reflects as much – despite realizing more than a week ago that the Agreement had been publicly filed, SBA never sought to seal it or even raised it with Fractus. Instead, SBA drew more attention to the document through a lengthy discussion in its public reply. The Agreement is simply no proxy for how Fractus treats material that the protective order governs. Nevertheless, Fractus will submit a motion to seal the filing of Exhibit 5 to the Chan Declaration (ECF No. 10-5).

11, 2018); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6-7 (D. Mass. Nov. 13, 2013).

Moreover, the Supplemental Silberstein Declaration appears to address the purported hardship of a request that Fractus does not make. *See* Suppl. Silberstein Decl. ¶ 8. Far from asking SBA to visit its individual cell sites and perform any "analysis" or calculations, Fractus merely asks that SBA disclose the maximum amount of equipment that relevant cell sites are permitted to host, and how much of that space was rented during the period between April 9, 2012 and the present. Fractus' Combined Mem. at 2. Adjectives and bold-faced font aside, *see, e.g.,* SBA Reply at 15, the nature of SBA's business and the narrowness of the Data Points belie SBA's conclusory assertions of any "oppressive and undue" burden. *See State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc.,* No. 12-cv-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013); *New England Compounding Pharmacy*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *6-7. This is yet another reason why the Court should grant the cross-motion.

## IV. SBA'S OBJECTIONS TO THE PLACE AND TIME FOR COMPLIANCE ARE FRIVOLOUS

SBA cannot manufacture an undue burden based on the designated place of compliance (which is proper under Fed. R. Civ. P. 45(c)(1)(A), given SBA's indisputable transaction of business through the ownership, operation and construction of many cell sites within a 100-mile radius of Manhattan. *See* Fractus' Combined Mem. at 19-20). In fact, the Subpoena empowers SBA to choose its mode of compliance. Rather than appearing in person to provide the discovery in Manhattan, then, SBA may elect to simply mail the discovery to Kobre & Kim's San Francisco office. *See* Dockery Decl., Ex. 2 at 2, 8 ¶ 3 (allowing production of exact copies of documents directed to the attention of the issuing officer reflected on face of Subpoena form – i.e., Michael Ng, at 150 California Street, 19th Floor, San Francisco, CA 94111). This alone

6

demonstrates that SBA's position is frivolous. *See Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transportation*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016) (refusing to quash document subpoena and modifying place of compliance from New York to Istanbul while noting that purpose of 100-mile rule "is to avoid imposition of unreasonable travel burdens").

In any event, the language of Rule 45(c)(1) is plain and the Court should enforce it as written. The Rule does not require that SBA be headquartered near the place of compliance, *contra* SBA Reply at 24-26; only that compliance be designated "within 100 miles" of any location where SBA "resides, is employed, or regularly transacts business." *See* Rule 45(c)(1)(A). This makes sense, because the party that serves a Rule 45 subpoena will rarely know where a corporate third-party has chosen to keep the corporation's evidence. Rule 45 would be a virtual nullity if, as SBA suggests, a Rule 45 subpoena is "deficient" unless the issuing party first (i) identifies which documents the third-party possesses, has custody of or controls that are sufficient to show the discovery sought, *see, e.g.,* SBA Reply at 16, 18; (ii) identifies the location where the third-party has chosen to keep those materials; and further (iii) locates the third-party personnel who maintain them. That is not the law; nor should it be.[5]

---

[5] SBA fails to appreciate that Fractus directed the Subpoena to SBA; not any specific agent or officer. As a corporate entity, SBA is "presumed to have custody and control of its own records ordinarily required in the course of business." *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 148 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) (internal quotations omitted). And because SBA does not dispute that SBA is ***itself*** subject to the Court's jurisdiction, *see* Fractus' Combined Mem. At 20-21 (establishing long-arm jurisdiction); SBA Reply at 1-28 (failing to contest long-arm jurisdiction); Suppl. Silberstein Decl. at 1-2; *id.* ¶ 3 (same), there is no need for Fractus to establish that SBA has agents or employees "within the Court's jurisdiction [with] control of the desired documents." *Contra* SBA Reply at 24-25. Fairly read, the unpublished, out-of-circuit cases on which SBA relies do not set such a standard. As Fractus previously explained in relation to *Hallamore,* the parties seeking discovery in those cases failed to establish that the third-party subpoena recipients regularly transacted business within 100 miles of the place of compliance. *See* Fractus' Combined Mem. at 21 n.5 (explaining why *Hallamore* is inapposite); *see also Tele Draulic, Inc. v. Hetronic Int'l, Inc.*, Misc. No. 16-108-SLR, 2016 WL 3606775, at *3 (D. Del. June 30, 2016). The subpoenaing parties instead attempted to rely solely on the third-parties' incorporation in Delaware. *See Hallamore*, 259 F.R.D. at 79; *Tele Draulic,* 2016 WL 3606775, at *3. On those records, the District of Delaware quashed each subpoena, noting that they violated the 100 mile rule and that despite the third-parties' incorporation in Delaware, the third-parties had no agents or employees there with custody of the relevant documents. *See Hallamore*, 259 F.R.D. at 80; *Tele Draulic,* 2016 WL 3606775, at *4.

SBA's suggestion that Fractus was somehow obligated to provide SBA with a form of civil discovery regarding SBA's own contacts with New York is similarly unsupported. *See* SBA Reply at 7. The onus was on SBA – as the party with superior knowledge of its own contacts in and around Manhattan, and as the party refusing to comply with a properly-served Subpoena – not to take inaccurate and unjustifiable positions while meeting and conferring. Notably, SBA never asked Fractus to move the place of compliance to Miami, Florida. *See* SBA Reply at 24, 26. This is presumably because SBA will not comply with any document request from Fractus unless a federal court orders SBA to do so. *See, e.g.,* SBA Reply at 14 (reflecting that counsel for SBA (wrongly) characterized the Subpoena as "defective" and "informed Fractus that it [SBA] was not obligated to produce documents in response"); *see also* Fractus' Combined Mem. at 9-11. The Supplemental Silberstein Declaration does not indicate otherwise.[6]

Finally, as Fractus has already established, the thirteen-day compliance window is more than reasonable under the circumstances. *See* Fractus' Combined Mem. at 21-22. Contrary to SBA's interpretation, the fact that certain courts have found a fourteen-day compliance window to be "presumptively reasonable" does not establish any rule that a thirteen-day compliance window is "presumptively *un*reasonable." SBA Reply at 26 (emphasis added). SBA both misstates the holdings of the cases addressing the fourteen-day compliance windows, and fails to identify any case that holds that a thirteen-day compliance window is "presumptively unreasonable." The Court should reject SBA's invitation to misconstrue the case law.

---

[6] "Generally, modification of a subpoena is preferable to quashing it outright," unless it cannot be modified "in any fruitful manner." *See* Fractus' Combined Mem. at 12 (quoting authorities). Accordingly, notwithstanding that the Subpoena was proper as issued, the Court may exercise its discretion to modify the Subpoena to identify Miami, Florida as the place of compliance. Modification would similarly resolve SBA's purported concerns that the Data Points are "burdensomely vague" with respect to either timeframe or the type of capacity at issue. *See* SBA Reply at 19-20; *see also id.* at 15-16.

V. **COST SAVINGS IS A WELL-ESTABLISHED MEASURE OF PATENT DAMAGES, AND THE DATA POINTS ARE CRITICAL ASPECTS OF THAT FORMULA**

Regardless of whether SBA "fails to understand" Fractus' damages model, or considers it "baffling" or "incredibly odd," SBA Reply at 11, 19, 22, the cost savings model is well-established, *see* Fractus' Combined Mem. at 4.  As Fractus has already explained, the Data Points relate to the total equipment burden of the cell sites that the Carrier Defendants rented during the relevant period, as well as the portion of that rentable space that was arguably available to accommodate more, larger, or heavier equipment.  *Id.* at 4-8, 15-16.  When coupled with discovery that Fractus obtained from other sources, the Data Points will, among other things, refute any suggestion that as an alternative to using the infringing Multiband Base Station Antennas, the Carrier Defendants could simply have used bigger, larger, or more monoband antennas to attain the same degree of network quality.  *See id.* at 15-16.  The Data Points are not "tenuously connect[ed]. . . " to Fractus' damages, *contra* SBA Reply at 21; *see also id.* at 18-20, but rather integral components of the cost savings formula.  *See* Fractus' Combined Mem. at 4-8, 15-16.  SBA's focus on trends in consumption of cell site capacity and the reasons for those trends misses the point.  *See* SBA Reply at 10-11.  The Court should grant the cross-motion.

## CONCLUSION

For the foregoing reasons, as well as the ones stated in Fractus' Combined Memorandum, supporting declarations, and exhibits, Fractus respectfully requests that the Court enter an order compelling SBA to produce the Data Points immediately.  This timeline remains necessary in light of the April 15, 2019, deadline for fact discovery in the Patent Litigation.

|  |  |
|---|---|
| Dated: New York, New York<br>April 1, 2019 | Respectfully submitted,<br><br>KOBRE & KIM LLP<br><br>By:  /s/ Kimberly Perrotta Cole<br>Kimberly Perrotta Cole<br>Clinton J. Dockery<br>800 Third Avenue<br>New York, New York 10022<br>(212) 488-1200<br>kimberly.cole@kobrekim.com<br>clinton.dockery@kobrekim.com<br><br>*Attorneys for Plaintiff Fractus, S.A.* |